```
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------------X
OMAR CHUKWUEZE,                                                         :
                                                                        :
                              Plaintiff,                                :
                                                                        :          10 Civ. 8133 (JMF)
          -v-                                                           :
                                                                        :          OPINION AND ORDER
NYCERS (NEW YORK CITY EMPLOYEES'                                        :
RETIREMENT SYSTEM),                                                     :
                                                                        :
                              Defendant.                                :
------------------------------------------------------------------------X
```

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:_____
DATE FILED: 8/30/2012

JESSE M. FURMAN, United States District Judge:

This employment discrimination case stems from *pro se* Plaintiff Omar Chukwueze's employment as an Assistant Retirement Benefits Manager at the New York City Employees' Retirement System ("NYCERS") from September 18, 2006, until his termination on January 21, 2009. (Compl. at 5, 8).[1] Invoking Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et. seq.*, Chukwueze alleges that he was the victim of discrimination on the basis of religion and national origin, that he was wrongfully terminated, and that he was retaliated against for requesting religious accommodation and for complaining and testifying about the discrimination that he and others faced. (Compl. at 3).[2] Defendant has moved to dismiss pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, on the grounds that several of Chukwueze's claims are barred as untimely or for failure to exhaust administrative remedies, and that

---

[1] For ease of reference, citations to the complaint are to the amended complaint as numbered in Exhibit A to Defendant's Memorandum of Law in Support of its Motion to Dismiss.

[2] The Court received a letter from Plaintiff, dated July 21, 2012, which, liberally construed, seeks to amend the complaint to add claims under other employment discrimination statutes and an employment law claim under the Fair Labor Standards Act. There is no accompanying affidavit or proof of service, so the Court will not accept this letter for filing. If the Plaintiff wishes to amend his complaint, he must file a motion to do so.

Chukwueze has failed to state a claim upon which relief could be granted.  For the reasons discussed below, Defendant's motion to dismiss is granted in part and denied in part.

## BACKGROUND

In reviewing a motion to dismiss pursuant to Rule 12(b)(6), the Court must accept the factual allegations set forth in the complaint as true and draw all reasonable inferences in favor of the plaintiff.  *See, e.g.*, *Holmes v. Grubman*, 568 F.3d 329, 335 (2d Cir. 2009).  Although a court generally may not look outside the pleadings when reviewing a 12(b)(6) motion to dismiss, because a *pro se* plaintiff's allegations must be construed liberally it is appropriate for a court to consider factual allegations made in a *pro se* plaintiff's opposition memorandum, as long as the allegations are consistent with the complaint.  *See, e.g.*, *Braxton v. Nichols*, No. 08 Civ. 08568 (PGG), 2010 WL 1010001, at *1 (S.D.N.Y. Mar. 18, 2010); *cf. Gill v. Mooney*, 824 F.2d 192, 195 (2d Cir. 1987) (considering a *pro se* plaintiff's affidavit in opposition to a motion to dismiss in addition to those in the complaint).  Accordingly, the following facts are drawn from Chukwueze's amended complaint and his opposition to the motion to dismiss (to the extent it is consistent with the complaint), and are accepted as true for the purposes of this motion.

Chukwueze, an evangelical Christian of West Indian descent, worked at NYCERS as a provisional employee with the title of Assistant Retirement Benefits Examiner from September 18, 2006, until January 21, 2009.  (Compl. at 5, 8).  Chukwueze alleges that he first faced religious discrimination in 2007, when he requested to take leave on December 26th for religious observance of St. Stephen's Day.  (*Id.* at 9, 11).  His supervisor, Michelle Gaddy, told him that December 26th was not a religious holiday and, although she did not prohibit him from taking the day off, she made him change the reason for leave stated on his leave request from "annual leave for religious observance" to "annual leave for vacation."  (*Id.* at 5, 9).  Several months

2

later, when Chukwueze requested a vacation day to observe Good Friday, Gaddy got very upset and made several comments to Chukwueze, such as "You are giving me this form because you think I can't deny it" (*id*. at 9), and "You think I have to give you this day off!!!" (*Id*. at 14). Despite Gaddy's initial reaction, Chukwueze was ultimately given permission to take the day off. (*Id*. at 8).

In early December 2008, Chukwueze requested annual leave for religious observance of St. Stephen's day once again. When he made the request, Gaddy confronted him "in a hostile manner," and stated "in a loud and audacious voice, 'that is not a religious holiday and I do not have to give you that day off.'" (*Id*. at 9). Chukwueze alleges that Gaddy behaved with "continued public belligerence and aggressiveness," which led him to request to speak with the division director in a private location. (*Id.*). The following day, Gaddy refused Chukwueze's request to speak to the division director, and instead had his unit supervisor join them for another conversation. (*Id.*). Chukwueze described this as a "horrendous conversation which lasted for more than hour," during which he was "interrogated and chastised about [his] decision" to take time off. (*Id.*). He accuses Gaddy of saying that she felt that she had been ignorant when she signed the slip for an earlier leave request in 2006, but this year "SHE WAS READY FOR [HIM]!!" (*Id.* at 9). "After [Chukwueze's] continued explanation and beseeching," during which time Gaddy allegedly attempted to coerce him into taking different days off, Chukwueze was given permission to take the day off. (*Id.* at 9, 11).

In mid-January 2009, Gaddy discovered that Plaintiff had begun keeping a record of her actions that he thought were unjust. Gaddy responded: "That is not going to save you!!!" (*Id.* at 12; Pl.'s Opp'n at 6). Chukwueze was terminated the following day on January 21, 2009. (Pl.'s Opp'n at 6). The Human Resources director refused to tell Chukwueze why he had been fired.

(*Id.*).  Following Chukwueze's termination, however, Gaddy told members of Chukwueze's unit that he was terminated because he was too opinionated and that he could not complain while he was a provisional employee.  (Compl. at 5).  Defendant asserts that Plaintiff was terminated for cause for lying to his manager regarding his overtime usage.  (Def.'s Mem. of Law at 2).  Plaintiff contends, however, that he initiated all conversations with his managers about overtime usage and did not lie to them.  (Compl. at 16).

On March 13, 2009, Chukwueze filed a charge of discrimination with the Equal Employment Opportunities Commission ("EEOC") alleging religious discrimination and retaliation; his charge said nothing about discrimination on the basis of national origin.  (*Id.* at 8).  For example, he checked boxes on the form for religious discrimination and retaliation, but did not check the box labeled "national origin."  (*Id.*).  And, although Chukwueze identified himself as "a Christian of West Indian descent," his allegations were limited to his religious practices and his requests to take days off for religious observance in 2007 and 2008.  (*Id.*).  The charge concluded with the following statement: "I believe that I have been discriminated against because of my religion and retaliated against for protesting such discrimination . . . ."  (*Id.*).

In July 2009, Chukwueze testified as a witness in a discrimination case brought by one of his former coworkers before the New York State Division of Human Rights.  (*Id*. at 18-19).  In January 2010, Chukwueze discovered that his name had been removed from the list of people eligible for civil service positions as assistant retirement benefits examiners.  (*Id*. at 18).  Chukwueze was told that he was removed from the list because of his failure to report for a job interview with NYCERS.  (*Id.*).  The EEOC issued its Notice of Right to Sue Letter on July 27, 2010.  (*Id.* at 7).  Chukwueze filed this action on October 26, 2010.  (Docket No. 1).

## DISCUSSION

### A. Rule 12(b)(6) Standards

To survive a Rule 12(b)(6) motion, a plaintiff must generally plead sufficient facts "to state a claim to relief that is plausible on its face." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007). A claim is facially plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Twombly*, 550 U.S. at 556). More specifically, the plaintiff must allege sufficient facts to show "more than a sheer possibility that a defendant acted unlawfully." *Id.* A complaint that offers only "labels and conclusions" or "a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555. Further, if the plaintiff has not "nudged [his or her] claims across the line from conceivable to plausible, [the] complaint must be dismissed." *Id.* at 570.

*Twombly* and *Iqbal* notwithstanding, the Supreme Court has held that, to survive a motion to dismiss, "a complaint in an employment discrimination lawsuit [need] not contain specific facts establishing a prima facie case of discrimination under the framework set forth in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973)." *Id.* at 569 (quoting *Swierkiewicz v. Sorema N. A.*, 534 U.S. 506, 508 (2002)).[3] Nevertheless, the elements of a *prima facie* case "provide an outline of what is necessary to render [a plaintiff's employment discrimination]

---

[3] Whether *Swierkiewicz* remains good law in light of *Twombly* and *Iqbal* is "somewhat of an open question" in this circuit. *Hedges v. Town of Madison*, 456 F. App'x. 22, 23 (2d Cir. 2012). Although the Supreme Court expressly reaffirmed the decision in *Twombly*, *see* 550 U.S. at 569-70, the Second Circuit has questioned its continuing vitality in several unpublished opinions. *See Hedges*, 456 F. App'x. at 23; *Schwab v. Smalls*, 435 F. App'x. 37, 39-40 (2d Cir. 2011); *Jackson v. County of Rockland*, 450 F. App'x. 15, 19 (2d Cir. 2011). The Court of Appeals has not resolved the question, however, suggesting only "that, at a minimum, employment discrimination claims must meet the standard of pleading set forth in *Twombly* and *Iqbal*, even if pleading a prima facie case is not required." *Hedges*, 456 F. App'x. at 23.

claims for relief plausible." *Sommersett v. City of New York*, No. 09 Civ. 5916 (LTS) (KNF), 2011 WL 2565301, at *5 (S.D.N.Y. June 28, 2011). Accordingly, "courts consider these elements in determining whether there is sufficient factual matter in the complaint which, if true, gives Defendant a fair notice of Plaintiff's claim and the grounds on which it rests." *Murphy v. Suffolk County Cmty. Coll.*, 10-CV-0251 (LDW) (AKT), 2011 WL 5976082, at *5 (E.D.N.Y. Nov. 29, 2011).

Even under the heightened pleading standards set by *Iqbal* and *Twombly*, a court is "obligated to construe a *pro se* complaint liberally." *Harris v. Mills*, 572 F.3d 66, 72 (2d Cir. 2009). Thus, when considering *pro se* submissions, the Court should interpret them "to raise the strongest arguments that they *suggest.*" *Triestman v. Fed. Bureau of Prisons*, 470 F.3d 471, 474 (2d Cir. 2006) (per curiam) (internal quotation marks omitted). Notwithstanding the Court's obligation, "to survive a motion to dismiss, a *pro se* plaintiff must still plead sufficient facts to state a claim that is plausible on its face." *Bodley v. Clark*, 11 Civ. 8955 (KBF), 2012 WL 3042175, at *2 (S.D.N.Y. July 23, 2012); *see also, e.g.*, *Green v. McLaughlin*, — F. App'x —, 11-5451-PR, 2012 WL 1592621, at *1 (2d Cir. May 8, 2012) ("[P]*ro se* complaints must contain sufficient factual allegations to meet the plausibility standard . . . .").

### B. Analysis

As noted above, Defendant moves to dismiss on three grounds: (1) that some of Plaintiff's allegations of discriminatory treatment are time barred; (2) that Plaintiff failed to exhaust his allegations of discrimination on the basis of national origin before the EEOC; and (3) for the remaining claims, that Plaintiff fails to state a claim on which relief can be granted. The Court will address each argument in turn.

**1. Timeliness**

Under Title VII, a plaintiff in New York State must file a charge with the EEOC within 300 days of the allegedly unlawful practice to bring suit. *See* 42 U.S.C. § 2000e-5(e)(1). Although there is an exception for discriminatory acts that were part of a continuing policy and practice of prohibited discrimination, this "continuing violation" exception applies only to "cases involving specific discriminatory policies or mechanisms." *Lambert v. Genesee Hosp.,* 10 F.3d 46, 53 (2d Cir. 1993), *abrogated on other grounds by Kasten v. Saint-Gobain Performance Plastics Corp.*, 131 S. Ct. 1325 (2011). "[M]ultiple incidents of discrimination, *even similar ones*, that are not the result of a discriminatory policy or mechanism do not amount to a continuing violation." *Id.* (emphasis added); *see Nat'l R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 113 (2002) ("[D]iscrete discriminatory acts are not actionable if time barred, even when they are related to acts alleged in timely filed charges."); *Elmenayer v. ABF Freight Sys., Inc.*, 318 F.3d 130, 134-35 (2d Cir. 2003) (holding that an employer's rejection of an employee's proposed religious accommodation is a "discrete" act, not subject to the "continuing violation" exception).

In this case, Plaintiff filed his charge of discrimination with the EEOC on March 13, 2009, so any allegations of unlawful employment practices prior to May 17, 2008, are time barred unless they fall within the "continuing violation" exception. Plaintiff does invoke that exception (Pl.'s Opp'n at 13), but there is no merit to his argument with respect to the claims that Defendant discriminated against him in connection with his requests for leave in December 2007 and on Good Friday in 2008. Those allegations of discrimination are plainly "discrete" acts and therefore not subject to the "continuing violation" exception. *See Elmenayer*, 318 F.3d at 134-35. Accordingly, they are time barred and must be dismissed.

## 2. Exhaustion

Under Title VII, a plaintiff is required to file a charge of discrimination with the EEOC before filing suit in federal court. *See* 42 U.S.C. § 2000e-5(f); *see also Francis v. City of New York*, 235 F.3d 763, 768 (2d Cir. 2000) (holding that this requirement is a non-jurisdictional precondition to bringing suit). Under a narrow exception to this exhaustion requirement, however, new claims that are "reasonably related" to those filed in an EEOC charge may be filed in federal court. *Holtz v. Rockefeller & Co., Inc.*, 258 F.3d 62, 83 (2d Cir. 2001) (citing *Butts v. City of New York Dep't of Hous. Pres. & Dev.*, 990 F.2d 1397, 1401 (2d Cir. 1993), *superseded by statute on other grounds*, Civ. Rights Act of 1991, Pub. L. No. 102-166, 105 Stat. 1074, *as recognized in Carter v. New Venture Gear, Inc.*, 310 F. App'x 454, 458 (2d Cir. 2009)). To the extent relevant here, a claim first alleged in federal court is reasonably related "where the conduct complained of would fall within the scope of the EEOC investigation which can reasonably be expected to grow out of the charge of discrimination." *Butts*, 990 F.2d at 1402 (internal quotation marks omitted). The *Butts* Court explained that this exception to the exhaustion requirement "is essentially an allowance of loose pleading," and is based on the recognition "that EEOC charges frequently are filled out by employees without the benefit of counsel and that their primary purpose is to alert the EEOC to the discrimination that a plaintiff claims [he] is suffering." *Id.* The "central question" in the inquiry "is whether the complaint filed with the EEOC gave that agency 'adequate notice to investigate discrimination on both bases.'" *Williams v. N.Y.C. Hous. Auth.*, 458 F.3d 67, 70 (2d Cir. 2006) (quoting *Deravin v. Kerik*, 335 F.3d 195, 202 (2d Cir. 2003)). To answer that question, the court's "focus should be 'on the factual allegations made in the [EEOC] charge itself, describing the discriminatory

conduct about which a plaintiff is grieving.'" *Deravin*, 335 F.3d at 201 (quoting *Freeman v. Oakland Unified Sch. Dist.,* 291 F.3d 632, 637 (9th Cir. 2002)).

In this case, there is no dispute that Chukwueze's filing with the EEOC did not allege discrimination on the basis of national origin. Among other things, he checked the boxes for religious discrimination and retaliation, but left the box labeled "national origin" blank; the allegations were limited to his religious practices and his requests to take days off for religious observance; and the charge concluded with a statement that Chukwueze was "discriminated against because of [his] religion and retaliated against for protesting such discrimination." (Compl. at 8). Nor can it be said that the claim of national origin discrimination is "reasonably related" to the claims alleged in the EEOC charge. After all, "[a]n investigation of charges of discriminatory action based upon creed and retaliation would not naturally result in an investigation into discrimination based on the . . . national origin . . . of an employee." *Jiggetts v. Diaz*, 02 Civ. 8959 (LTS) (JCF), 2009 WL 749575, at *6 (S.D.N.Y. Mar. 20, 2009); *see also Musaji v. Banco do Brasil*, 10 Civ. 8541 (RJH), 2011 WL 2507712, at *6 (S.D.N.Y. June 21, 2011) (holding that plaintiff's district court complaint alleging national origin discrimination was not "reasonably related" to plaintiff's EEOC charge alleging religious discrimination).

The fact that Chukwueze identified himself in the EEOC charge as "a Christian of West Indian descent" and referred to a statement by Gaddy that December 26th may be a holiday in Trinidad, but not in New York, does not change the analysis or conclusion. These two indirect references to national origin were insufficient to "alert" the EEOC or provide "adequate notice" that Chukwueze was suffering discrimination on the basis of his national origin, especially in light of Chukwueze's failure to check the national origin box on the EEOC charge form, his explicit statement that he was discriminated against on the basis of religion, and the otherwise

9

exclusive focus of the charge on religious discrimination.  *See Jiggetts*, 2009 WL 749575, at *7 (holding that when plaintiff's EEOC charge alleged only religious discrimination, a reference to himself as a "black-male" in the charge was insufficient to put the EEOC on notice of unalleged racial discrimination claims).

Finally, in his memorandum of law opposing the motion to dismiss, Chukwueze alleges that he filed other materials with the EEOC that indicated discrimination on the basis of national origin, which were misplaced by the agency, and that he was told (presumably by an EEOC employee) when he initially filed his charge that "both categories would be examined because in his case they had a connection."  (Pl.'s Opp'n at 14).  Putting aside the question of whether these allegations can or should be considered by the Court, they do not excuse Chukwueze's failure to exhaust.  First, EEOC regulations allow additional written statements only to "'clarify and amplify allegations made' in the original charge or 'alleg[e] additional acts which constitute unlawful employment practices related to or growing out of the subject matter of the original charge,'" but not to allege new claims.  *Holtz*, 258 F.3d at 83 (quoting 29 C.F.R. § 1601.12(b)).  Second, misrepresentations by a governmental official do not bind the government or excuse noncompliance with a statutory requirement — in this case, the exhaustion requirement.  *See, e.g.*, *Schweiker v. Hansen*, 450 U.S. 785 (1981) (holding that where regulations permitted an award of retroactive social security benefits for up to a year prior to a written application, a government official's erroneous oral advice that a potential claimant was ineligible did not excuse that claimant's failure to file a written application and did not estop the government from enforcing the one-year limitation on benefits); *see also Office of Pers. Mgmt. v. Richmond*, 496 U.S. 414, 420-23 (1990) (summarizing case law disfavoring equitable estoppel against the government on the basis of an official's erroneous advice).

Accordingly, Chukwueze's claim for discrimination on the basis of national origin must be, and is, dismissed.

### 3. Failure to State a Claim

Plaintiff's remaining claims are for disparate treatment at the time of his leave request in December 2008; for hostile work environment; for wrongful and discriminatory termination on January 21, 2009; and for retaliation, both in the form of his firing and in his removal from the civil service eligibility list. Defendant argues that these claims should be dismissed for failure to state a claim upon which relief can be granted. (Def.'s Mem. of Law at 5).

#### a. Disparate Treatment Claims

First, Plaintiff alleges two distinct types of discriminatory treatment — failure to accommodate his religious observance and a standard disparate treatment claim based on Gaddy's reactions to his requests for accommodations. To make out a *prima facie* case of religious discrimination, plaintiffs must prove that "(1) they held a bona fide religious belief conflicting with an employment requirement; (2) they informed their employers of this belief; and (3) they were disciplined for failure to comply with the conflicting employment requirement." *Baker v. The Home Depot*, 445 F.3d 541, 546 (2d Cir. 2006) (internal quotation marks and citations omitted). The third prong "require[s] 'some adverse employment action — typically, discipline, demotion, transfer or termination — for refusing to comply with the conflicting employment requirement.'" *O'Neill v. City of Bridgeport Police Dep't*, 719 F. Supp. 2d 219, 225 (D. Conn. 2010) (quoting *Bowles v. N.Y.C. Transit Auth.*, Nos. 00 Civ. 4213 (BSJ) (MHD), 03 Civ. 3073 (BSJ) (MHD), 2006 WL 1418602, at *9 (S.D.N.Y. May 23, 2006)). "Once a prima facie case is established by the employee, the employer must offer [him] a reasonable accommodation, unless doing so would cause the employer to suffer an undue

11

hardship." *Id.* The employer's offer of a reasonable accommodation ends the inquiry into discrimination. *See, e.g.*, *Cosme v. Henderson*, 287 F.3d 152, 158 (2d Cir. 2002).

In light of these elements, Chukwueze's complaint fails to state a claim of religious discrimination upon which relief could be granted. Chukwueze argues first that he was denied a reasonable accommodation with respect to his December 2008 leave request because he was initially denied leave and because his requests were met "with hostility and severe opposition." (Compl. at 13; Pl.'s Opp'n at 10). By his own admission, however, he was ultimately allowed his requested accommodation, namely to be allowed to use his annual leave to take the day off. (Compl. at 9). Thus, even assuming that Chukwueze could establish a *prima facie* case of discrimination on this basis, his claim that Defendant failed to accommodate his religious observance is implausible and fails. Put simply, Defendant did accommodate him. *See Leifer v. New York State Div. of Parole*, 391 F. App'x 32, 34 (2d Cir. 2010) (holding that where an employee was given permission take a day off for religious observance, even though he was forced to miss a training scheduled that day, he had been granted a reasonable accommodation).

Chukwueze's second claim of disparate treatment — that "other employees of other faiths were granted their religious days without being chastised in the presence of their entire unit on many occasions for making such request[s] for religious accommodation" (Compl. at 10; *see also id.* at 13) — also fails. As noted above, to support a claim of disparate treatment, a plaintiff must identify an "adverse employment action." *See O'Neill*, 719 F. Supp. 2d at 225 (citing cases); *Siddiqi v. N.Y.C. Health & Hosps. Corp.*, 572 F. Supp. 2d 353, 370 (S.D.N.Y. 2008) (same). An adverse employment action is "'more disruptive than a mere inconvenience or an alteration of job responsibilities' and can include 'termination of employment, a demotion evidenced by a decrease in wage or salary, a less distinguished title, a material loss of benefits,

12

significantly diminished material responsibilities, or other indices . . . unique to a particular situation.'" *Leibowitz v. Cornell Univ.*, 584 F.3d 487, 499 (2d Cir. 2009) (quoting *Galabya v. N.Y. City Bd. of Educ.,* 202 F.3d 636, 640 (2d Cir. 2000)). Measured against these standards, Gaddy's alleged treatment of Chukwueze, "— however unpleasant for [him] — [does not] amount to an adverse employment action, at least for the purposes of a religious discrimination claim." *O'Neill*, 719 F. Supp. 2d at 225.

### b. Hostile Work Environment Claim

Chukwueze also claims that "Gaddy created a [h]ostile work environment when she continually berated [him] in the presence of the entire unit regarding [his] desire to take certain days off as religious observance." (Compl. at 14). To prove a *prima facie* case of a hostile work environment, a plaintiff must demonstrate that (1) his or her workplace was permeated with discriminatory intimidation that was sufficiently severe or pervasive to alter the conditions of the work environment and (2) a specific basis exists for imputing the conduct that created the hostile environment to the defendant. *See, e.g.*, *Petrosino v. Bell Atl.*, 385 F.3d 210, 214 (2d Cir. 2004) (internal quotation marks and citations omitted). The law in this circuit is clear that "[i]solated incidents usually will not suffice to establish a hostile work environment," *Redd v. New York Div. of Parole*, 678 F.3d 166, 175-76 (2d Cir. 2012), and that "[t]he incidents of allegedly offensive conduct must also be 'more than episodic; they must be sufficiently continuous and concerted in order to be deemed pervasive.'" *Holtz*, 258 F.3d at 75 (quoting *Perry v. Ethan Allen, Inc.,* 115 F.3d 143, 149 (2d Cir.1997)). The Second Circuit has also noted that "many bosses are harsh, unjust, and rude," but that this fact alone is insufficient to create a hostile work environment claim. *Alfano v. Costello*, 294 F.3d 365, 377 (2d Cir. 2002). Hostile work environment claims are evaluated by looking at all of the circumstances, which may include the

13

"frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance." *Harris v. Forklift Sys., Inc.*, 510 U.S. 17, 23 (1993).

Here, even accepting as true all of the factual allegations in Plaintiff's complaint, and construing them to raise the strongest arguments that they present in light of his *pro se* status, Plaintiff fails to plead a plausible case of a hostile work environment. Chukwueze identifies only three incidents over the course of a year in which he was "chastised" or "berated" in front of his unit before ultimately being given the time off that he requested. (Compl. at 10, 14). Conclusory statements about ongoing abuse aside (*see, e.g.*, Compl. at 19), these allegations are insufficient to nudge his claim across the line from possible to plausible. *See Twombly*, 550 U.S. at 555, 570. At most, Plaintiff's allegations represent "episodic" instances of "mere offensive utterance[s]" and thus are neither severe nor pervasive enough to alter the conditions of his work environment. *See Garvin v. Potter*, 367 F. Supp. 2d 548, 566-67 (S.D.N.Y. 2005) (holding that repeated attempts to convince plaintiff to work on the Sabbath did not constitute a hostile work environment). Accordingly, Chukwueze's hostile work environment claim must be dismissed.

   **c. Termination Claim**

Chukwueze's termination claim, however, is sufficient to survive Defendant's motion to dismiss. To ultimately succeed on this claim, Chukwueze would have to prove that he "(1) is a member of a protected class; (2) was performing his duties satisfactorily; (3) was discharged; and that (4) his discharge occurred under circumstances giving rise to an inference of discrimination on the basis of his membership in the protected class." *Graham v. Long Island R.R.*, 230 F.3d 34, 38 (2d Cir. 2000). There is no real dispute as to the first and third prongs as Chukwueze is an evangelical Christian and he was fired. As to the second prong, Chukwueze contends that he

was an employee in good standing, that all of his evaluations were satisfactory or above, and that he had no unscheduled absences. (Compl. at 10). Chukwueze also alleges that NYCERS's claimed reason for firing him, lying to his supervisors about overtime, was a fabricated pretext to justify his firing. (Compl. at 12, 16-17). These pleadings are sufficiently specific to plausibly allege that Chukwueze was performing his duties satisfactorily.

In evaluating the fourth prong, courts must remain cognizant that "[e]mployers are rarely so cooperative as to include a notation in the personnel file that their actions are motivated by factors expressly forbidden by law." *Chambers v. TRM Copy Centers Corp.*, 43 F.3d 29, 37 (2d Cir. 1994) (quoting *Ramseur v. Chase Manhattan Bank*, 865 F.2d 460, 464 (2d Cir. 1989) (internal quotation marks omitted). "Because an employer who discriminates is unlikely to leave a 'smoking gun' attesting to a discriminatory intent, a victim of discrimination is seldom able to prove his claim by direct evidence, and is usually constrained to rely on circumstantial evidence." *Id.* Such evidence might include

> the employer's continuing, after discharging the plaintiff, to seek applicants from persons of the plaintiff's qualifications to fill that position, or the employer's criticism of the plaintiff's performance in ethnically degrading terms, or its invidious comments about others in the employee's protected group, or the more favorable treatment of employees not in the protected group, or the sequence of events leading to the plaintiff's discharge.

*Id.* (citations omitted).

In the present case, Chukwueze alleges that he made three separate requests for religious accommodations, all of which were met with some degree of hostility and opposition; that other employees who were evangelical Christians faced similar treatment; and that investigations based on complaints from other evangelical Christians in the unit found probable cause for

15

discrimination. (Compl. at 9, 11, 21).[4] He further alleges that members of certain other groups were given favored treatment, such as additional training and responsibilities in the workplace; received days off without the hostility and opposition that Plaintiff faced; and, most importantly, that they continued to be transferred into the unit and retained after he was fired, even though he possessed more seniority on the civil service eligibility list. (Compl. at 19-21). Plaintiff may not ultimately be able to prove these allegations, but it is clear that the alleged facts are the type of circumstantial evidence that the Second Circuit identified in *Chambers*. In light of the Court's obligation to construe *pro se* submissions liberally, the Court finds that the combination of these allegations suffices to state a plausible claim for relief for discriminatory termination.

### d. Retaliation Claims

Finally, Chukwueze raises two distinct claims of retaliation: first, that he was fired in retaliation for his complaints about religious discrimination by Gaddy; and second, that he was removed from the civil service eligibility list in retaliation for testifying at a coworker's discrimination hearing. To establish a *prima facie* case of retaliation, "an employee must show that (1) [he] was engaged in protected activity; (2) the employer was aware of that activity; (3) the employee suffered a materially adverse action; and (4) there was a causal connection between the protected activity and that adverse action." *Lore v. City of Syracuse*, 670 F.3d 127, 157 (2d Cir. 2012). "Protected activity" in this context normally takes the form of filing a formal complaint, but the Second Circuit has held that informal complaints to management also qualify as "protected activity." *See Kotcher v. Rosa & Sullivan Appliance Ctr., Inc.*, 957 F.2d 59, 65 (2d

---

[4] Although Chukwueze's earlier disparate treatment claims are, as discussed above, time barred, it is well established that a plaintiff may use the facts underlying a time-barred claim "as background evidence in support of a timely claim." *Morgan*, 536 U.S. at 113.

Cir. 1992) (finding informal complaints to be "protected activity" under Title VII); *see also Risco v. McHugh*, — F. Supp. 2d —, 10 Civ. 6314 (ER), 2012 WL 2161115, at *19 (S.D.N.Y. June 14, 2012) (citing *Sumner v. U.S. Postal Serv.*, 899 F.2d 203, 209 (2d Cir. 1990)).

Measured against these standards, Chukwueze's first retaliation claim — relating to his firing — is sufficient to survive Defendant's motion to dismiss. His allegations are plainly sufficient to satisfy the first three elements of a *prima facie* case given that he was fired after complaining to Gaddy and the unit supervisor and after informing Gaddy that he was recording her unjust actions. (Compl. at 12; Pl.'s Opp'n at 8). As for the final element, Plaintiff has alleged sufficient facts to establish a plausible causal connection between the protected activity and that adverse action. Most relevant for present purposes, he claims that Gaddy discovered him recording evidence of her actions and that he informed her that he planned to report her abusive behavior, causing her to respond "That is not going to save you!!!" (Compl. at 12); that he was fired the day after this confrontation with Gaddy (Pl.'s Opp'n at 8); and that Gaddy later told members of his unit that he was fired because of his complaints while he was still a provisional employee. (Compl. at 12; Pl.'s Opp'n at 8). In combination, these allegations easily satisfy the plausibility standard and allow the Court "to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 556).[5]

---

[5] Notably, Defendant's memorandum of law barely addresses these allegations. Instead, without citing any case law to support its points, it misconstrues Plaintiff's retaliation claim to be based solely on his requests for accommodation and inexplicably argues that the absence of past retaliation disproves the Plaintiff's present retaliation claim. In its reply memorandum of law, Defendant does not address Chukwueze's retaliatory firing claim at all.

17

The same cannot be said for Chukwueze's other retaliation claim, relating to his removal from the civil service eligibility list. (Compl. at 18).[6] For that claim, Chukwueze's only evidence of a causal connection between his testimony on a coworker's behalf and his removal from the civil service eligibility list is the fact that there were "several NYCERS executives present" at the hearing, including the Director of Human Resources who had fired him in January 2009, and the temporal proximity between his testimony in July 2009 and his removal from the list sometime between October 2009 and January 2010. (Compl. at 18-19). These allegations are insufficient to state a claim of retaliation.

First, the mere presence of NYCERS employees at the hearing does nothing to establish a causal connection. In fact, among other things, given that the hearing concerned NYCERS, it would have been surprising if it were unrepresented. Second, the temporal proximity between Chukwueze's testimony and the alleged adverse employment action — somewhere between three and six months — is insufficient, standing alone, to establish a causal connection. *See, e.g.*, *Sank v. City Univ. of New York*, 10 Civ. 4975 (RWS), 2011 WL 5120668, at *10-12 (S.D.N.Y. Oct. 28, 2011) (dismissing a Title VII retaliation claim where the only evidence of a causal connection was a ten-month gap between the protected activity and the adverse employment action); *McDowell v. N. Shore-Long Island Jewish Health Sys., Inc.*, 788 F. Supp. 2d 78, 83 (E.D.N.Y. 2011) (dismissing a Section 1981 retaliation claim where the only evidence of a causal connection was a three- to four-month gap); *Perry v. State of New York Dept. of*

---

[6] Defendant contends that Plaintiff's claim regarding removal from the civil service eligibility list should be dismissed because the removal was effected by the New York City Department of Citywide Administrative Services ("DCAS"), not NYCERS. (Def.'s Mem. of Law at 8). Plaintiff, however, alleges that his removal was a result of NYCERS reporting to DCAS that Plaintiff had not appeared for a scheduled job interview. (Compl. at 18). Liberally construed, therefore, Plaintiff's complaint alleges that NYCERS caused DCAS to effect his removal. Nevertheless, as discussed below, the claim fails for other reasons.

*Labor*, 08 Civ. 4610 (PKC), 2009 WL 2575713, at *6 (S.D.N.Y. Aug. 20, 2009) (dismissing a Title VII retaliation claim where the only evidence of a causal connection was a gap of more than one year), *aff'd sub nom. Perry v. New York Dept. of Labor*, 398 F. App'x 628 (2d Cir. 2010); *see also, e.g.*, *Murray v. Visiting Nurse Servs. of N.Y.*, 528 F. Supp. 2d 257, 275 (S.D.N.Y. 2007) (citing cases for the proposition that on summary judgment a gap of two or three months, without more, "does not allow for an inference of causation"); *Billue v. Praxair, Inc.*, No. 3:05-CV-00170 (JCH), 2007 WL 1231841, at *8 (D. Conn. Apr. 26, 2007) (noting that courts in the Second Circuit "have rejected finding a causal inference when there were gaps of three months, six months, eight months, one year, and eleven months between the [protected activity] and the alleged retaliation"). *See generally Clark County Sch. Dist. v. Breeden*, 532 U.S. 268, 273 (2001) (noting that retaliation claims relying solely on temporal proximity to demonstrate a causal connection are difficult to prove, and that the temporal proximity must be "very close").

In short, Chukwueze has not alleged facts that "nudge[]" his claim of retaliation based upon his testimony in July 2009 "across the line from conceivable to plausible," so it "must be dismissed." *Twombly*, 550 U.S. at 570.

## CONCLUSION

For the reasons stated above, Defendant's motion to dismiss is GRANTED with respect to (1) Plaintiff's claims of disparate treatment unrelated to his termination; (2) his hostile work environment claim; and (3) his retaliation claim based upon his post-termination testimony, and

those claims are hereby dismissed. Defendant's motion to dismiss is DENIED, however, with respect to Plaintiff's discriminatory and retaliatory termination claims.[7]

The Clerk of Court is directed to mail a copy of this Opinion and Order to Plaintiff. The Clerk of Court shall also terminate the motion (Docket No. 13).

SO ORDERED.

Dated: August 30, 2012
       New York, New York

_____
JESSE M. FURMAN
United States District Judge

---

[7]     Plaintiff's opposition to the motion to dismiss is styled in part as a motion for summary judgment "on the grounds that the defendant failed to adequately refute the assertions established in any of the prima facie cases" and because "the defendant's given reason for the Plaintiff's termination is not worthy of credence and lacks credibility." (Pl.'s Opp'n at 4). The Court, however, did not give notice that it might convert the motion to dismiss into one for summary judgment, *see* FED. R. CIV. P. 12(d), and neither party has had an opportunity to submit evidence. For those reasons and others, summary judgment is inappropriate at this time. Accordingly, Plaintiff's motion for summary judgment is denied without prejudice to refiling at a later date.