USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:_____
DATE FILED: 07/25/2014

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------------X
:
OMAR CHUKWUEZE, :
:
Plaintiff, :    10-CV-8133 (JMF)
:
-v- :
:    OPINION AND ORDER
NYCERS (NEW YORK CITY EMPLOYEES' :
RETIREMENT SYSTEM), :
:
Defendant. :
:
------------------------------------------------------------------------X

JESSE M. FURMAN, United States District Judge:

Plaintiff Omar Chukwueze sues his former employer, the New York City Employees' Retirement System ("NYCERS"), pursuant to Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000e *et seq.* ("Title VII"), alleging wrongful termination on the basis of his religion, as well as unlawful retaliation for complaining about religious discrimination. (Am. Compl. (Docket No. 7) 15-35).[1]  The parties now cross-move for summary judgment. (Docket Nos. 77, 81).  For the reasons discussed below, Plaintiff's motion is DENIED, Defendant's motion is GRANTED, and the Amended Complaint is DISMISSED.

## BACKGROUND

The following facts are undisputed except where noted. Plaintiff is a former employee of NYCERS, which is "the largest municipal public employee retirement system in the United

---

[1]  Proceeding *pro se*, Chukwueze brought several other claims in his original Complaint. (Compl. (Docket No. 1)).  By Opinion and Order dated August 30, 2012, however, the Court dismissed the other claims as time-barred, unexhausted, or for failure to state a claim.  *See Chukwueze v. NYCERS*, 891 F. Supp. 2d 443 (S.D.N.Y. 2012) (Docket No. 21).  Thereafter, Plaintiff obtained counsel and was granted additional time to complete discovery, with the assistance of counsel. (Docket Nos. 45, 47, 48).

States." (Pl.'s Resp. Defs.' Local Rule 56.1 Statement Undisputed Facts (Docket No. 90) ("Pl.'s 56.1 Resp.") ¶¶ 5, 9). He was hired on September 18, 2006, after interviewing with, among others, Michelle Gaddy and Olga Asaturyan, and began serving as an Assistant Retirement Benefits Examiner, but only on a provisional basis. (*Id.* ¶ 9; Decl. Supp. Def.'s Mot. Summ. J. (Docket No. 84) ("First Collyer Decl."), Ex. A, at 46:24-25, 83:19-84:1, 84:11-20, 93:19-21). Plaintiff's work was directly overseen by Asaturyan, a supervisor in his unit, and Gaddy, a manager in the same unit. (Pl.'s 56.1 Resp. ¶ 12; First Collyer Decl., Ex. A, at 87:21-25). During his term of employment, Plaintiff's annual salary was raised from $28,000 to approximately $36,000. (Pl.'s 56.1 Resp. ¶¶ 17-18; First Collyer Decl., Ex. A, at 85:6-12). At all times, Plaintiff's work was consistently rated as "Satisfactory." (Pl.'s 56.1 Resp. ¶ 15; First Collyer Decl., Ex. A, at 110:1-4).

Plaintiff is a non-denominational evangelical Christian who views December 26th — which under different Christian denominations and in different countries is known as Boxing Day or Saint Stephen's Day — "as an extension of the Christmas holiday and a religious day to do good deeds and acts and things of that nature." (First Collyer Decl., Ex. A, at 97:11-16). Plaintiff also believes that Good Friday is a religious day to be observed. (Pl.'s 56.1 Statement (Docket No. 85) ¶ 4; First Collyer Decl., Ex. A, at 98:12-24). NYCERS, however, does not recognize those dates as holidays. (Pl.'s 56.1 Resp. ¶ 19; First Collyer Decl., Ex. B). The NYCERS Employee Handbook does provide that an employee may take "annual leave" for "vacation, personal business *and religious holidays*." (First Collyer Decl., Ex. B (emphasis added)). The Handbook, however, provides that such leave "will be taken by employees at a time convenient to NYCERS. Employees must request their supervisor's/manager's approval to use annual leave prior to such use . . . . Approval is subject to NYCERS' discretion." (*Id.*).

Plaintiff requested, and Michelle Gaddy granted, permission to use annual leave to miss work on December 26, 2006. (Pl.'s 56.1 Resp. ¶¶ 23-24; First Collyer Decl., Ex. A, at 102:11-17). Similar requests were made, and eventually granted by Gaddy, for Good Friday and December 26th in both 2007 and 2008. (Pl.'s 56.1 Resp. ¶¶ 25-33; First Collyer Decl., Ex. A, at 105:8-17, 111:6-13, 113:23-114:6). But Plaintiff testified that, beginning with his request for annual leave on Good Friday in 2008, Michelle Gaddy became increasingly reluctant to grant his requests. (Pl.'s 56.1 Resp. ¶ 30; First Collyer Decl., Ex. A, at 114:8-24). According to Gaddy's contemporaneous Supervisory Notes on Performance, when Plaintiff requested leave for December 26, 2008, Gaddy told him that the day "is not a religious observance day and therefore he should not assume he would get this day off every year." (Pl.'s 56.1 Resp. ¶ 32; First Collyer Decl., Ex. C, at 1). According to Plaintiff's deposition testimony, Gaddy's notes reflect a meeting that lasted approximately ninety minutes and included not just Gaddy but also Olga Asaturyan. (Pl.'s 56.1 Resp. ¶ 32). As noted, and notwithstanding the tension surrounding Plaintiff's request, it was ultimately granted. (Pl.'s 56.1 Resp. ¶ 33; First Collyer Decl., Ex. A, at 123:1-25).

The events that immediately precipitated Plaintiff's termination took place on the afternoon of January 8, 2009. That afternoon, Gaddy was not in the office. (Pl.'s 56.1 Resp. ¶ 34; First Collyer Decl., Ex. A, at 136:19-22; *id.*, Ex. C, at 2). As a result of Gaddy's absence, Plaintiff sought approval from Asaturyan to work fifteen minutes of overtime at the end of the day. (Pl.'s 56.1 Resp. ¶ 35; *id.*, Ex. C, at 2). Asaturyan, in turn, sought authorization from Ingrid Stephen, Asaturyan's superior. (Pl.'s 56.1 Resp. ¶ 36; First Collyer Decl., Ex. D). Stephen told Asaturyan that Plaintiff should "go home," indicated that she did not want Plaintiff working overtime until she had a chance to discuss the matter with Gaddy, and later explained

that employees are not permitted "to work overtime unless there is coverage by at least one of the unit's managers or the Buy-Back supervisor." (Pl.'s 56.1 Resp. ¶¶ 37-38; First Collyer Decl., Ex. D).

Despite the fact that his request for overtime was denied, on January 12, 2009, Plaintiff submitted to Gaddy an overtime sheet indicating that he had worked fifteen minutes of overtime on January 8th after all. (Pl.'s 56.1 Resp. ¶ 39-40; First Collyer Decl., Ex. C, at 2).[2] According to Defendant, Gaddy refused to sign the overtime sheet because she had been made aware of Plaintiff's earlier denied request for permission to work the overtime in question. (First Collyer Decl., Ex. C, at 2).[3]

Plaintiff alleges that, eight days later, on January 20, 2009, Gaddy approached his desk and said, "Omar, you know, people make mistakes. Do you make any mistakes?" (Reply Decl. Supp. Def. NYCERS' Mot. Summ. J. (Docket No. 94) ("Second Collyer Decl."), Ex. I, at 153:17-154:1). In response, Plaintiff claims that he told Gaddy that he "would like to speak to Ingrid [Stephen] or someone else about what [he's] been experiencing because it's wrong." (*Id.*

---

[2] In his Local Rule 56.1 Response, Plaintiff asserts that he "he went to Michelle Gaddy and explained what transpired . . . before [he] handed any overtime sheet to Ms. Gaddy." (Pl.'s 56.1 Resp. ¶ 39). But that assertion is not supported by any citation to Plaintiff's deposition testimony or other admissible evidence of any kind, and an independent review of the excerpts of Plaintiff's deposition submitted in connection with these motions reveals no evidence to support Plaintiff's allegation. Plaintiff also states that he "denies" that his overtime sheet indicated that he had worked the extra fifteen minutes (Pl.'s 56.1 Resp. ¶ 40), but he provides neither a citation nor uncited-to evidence in connection with these motions to support his claim. Given that Plaintiff otherwise admits the authenticity of Gaddy's Supervisory Notes (*see* Pl.'s 56.1 Resp. ¶ 32), and that he offers no evidence of his own on the issue, the Court treats the submission of the overtime sheet reflecting fifteen minutes of overtime as admitted. *See Folkes v. N.Y. Coll. of Osteopathic Med. of N.Y. Inst. of Tech.*, 214 F. Supp. 2d 273, 281 (E.D.N.Y. 2002) (deeming admitted those facts not controverted by admissible evidence).

[3] Plaintiff denies not only that Gaddy had been told of the events of January 8th, but also that she refused to sign his overtime sheet. (Pl.'s 56.1 Resp. ¶¶ 41-42). Here, again, he offers no evidence to support his denial, and Defendant's assertion is therefore deemed admitted. *See Folkes*, 214 F. Supp. 2d at 281.

at 154:1-3).  He alleges that he then showed Gaddy his computer screen and told her that he was "typing and recording information of the incidents that I'm experiencing"; Plaintiff testified that Gaddy said "[t]hat's not going to save you."  (*Id.* at 154:4-9).  Shortly thereafter, Plaintiff asserts, Gaddy "walked off[,] . . . went to her computer[,] and . . . immediately started typing."  (*Id.* at 154:10-12).  Plaintiff does not allege that he has any knowledge of what Gaddy was writing.  (*Id.* at 154:12).

That same day, Gaddy sent her Supervisory Notes regarding Plaintiff to the Director of Human Resources at NYCERS, Felita Ramsami, and copied Ingrid Stephen.  (Pl.'s 56.1 Resp. ¶¶ 43; First Collyer Decl., Ex. D).  In response, Stephen commented that "[i]t was quite disturbing that [Chukwueze] claimed on his overtime sheet 15 minutes."  (Pl.'s 56.1 Resp. ¶ 44; First Collyer Decl., Ex. D).  The following day, Ramsami personally informed Plaintiff that his provisional employment was terminated, effective immediately.  (Pl.'s 56.1 Resp. ¶ 45, First Collyer Decl., Ex. E).  Notably, two days after his termination, Plaintiff e-mailed Gaddy, Stephen, Ramsami, and NYCERS Executive Director Diane D'Alessandro, to "thank" them — "especially" Gaddy, Stephen, and Ramsami — "for the great and wonderful opportunity of working at NYCERS," noting that he "truly and most graciously appreciate[d] [his] employment at NYCERS and it will always be held in the highest regard."  (First Collyer Decl., Ex. F).

On March 13, 2009, Plaintiff filed a charge of discrimination with the Equal Employment Opportunity Commission (the "EEOC").  (Compl. 8).  On July 27, 2010, the EEOC issued a right-to-sue letter.  (Compl. 7).  On October 26, 2010, Plaintiff initiated this lawsuit.  (Docket No. 1).  On July 20, 2011, Plaintiff filed an Amended Complaint.  (Docket No. 7).  On December 20, 2013, the parties cross-moved for summary judgment.  (Docket Nos. 77, 81).

**SUMMARY JUDGMENT STANDARDS**

Summary judgment is appropriate where the admissible evidence and the pleadings demonstrate "no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see also Johnson v. Killian*, 680 F.3d 234, 236 (2d Cir. 2012) (per curiam). A dispute over an issue of material fact qualifies as genuine if the "evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986); *accord Roe v. City of Waterbury*, 542 F.3d 31, 35 (2d Cir. 2008). The moving party bears the initial burden of demonstrating the absence of a genuine issue of material fact. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986). "In moving for summary judgment against a party who will bear the ultimate burden of proof at trial, the movant's burden will be satisfied if he can point to an absence of evidence to support an essential element of the nonmoving party's claim." *Goenaga v. March of Dimes Birth Defects Found.*, 51 F.3d 14, 18 (2d Cir. 1995) (citing *Celotex*, 477 U.S. at 322-23); *accord PepsiCo, Inc. v. Coca-Cola Co.*, 315 F.3d 101, 105 (2d Cir. 2002).

In ruling on a motion for summary judgment, all evidence must be viewed "in the light most favorable to the non-moving party," *Overton v. N.Y. State Div. of Military & Naval Affairs*, 373 F.3d 83, 89 (2d Cir. 2004), and the court must "resolve all ambiguities and draw all permissible factual inferences in favor of the party against whom summary judgment is sought," *Sec. Ins. Co. of Hartford v. Old Dominion Freight Line, Inc.*, 391 F.3d 77, 83 (2d Cir. 2004). When, as here, both sides move for summary judgment, the district court is "required to assess each motion on its own merits and to view the evidence in the light most favorable to the party opposing the motion, drawing all reasonable inferences in favor of that party." *Wachovia Bank, Nat'l Ass'n v. VCG Special Opportunities Master Fund, Ltd.*, 661 F.3d 164, 171 (2d Cir. 2011).

Thus, "neither side is barred from asserting that there are issues of fact, sufficient to prevent the entry of judgment, as a matter of law, against it." *Heublein, Inc. v. United States*, 996 F.2d 1455, 1461 (2d Cir. 1993).

To defeat a motion for summary judgment, the non-moving party must advance more than a "scintilla of evidence," *Anderson*, 477 U.S. at 252, and demonstrate more than "some metaphysical doubt as to the material facts," *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). The non-moving party "cannot defeat the motion by relying on the allegations in [its] pleading or on conclusory statements, or on mere assertions that affidavits supporting the motion are not credible." *Gottlieb v. Cnty. of Orange*, 84 F.3d 511, 518 (2d Cir. 1996) (citation omitted). Affidavits submitted in support or in opposition to summary judgment must be based on personal knowledge, must "set forth such facts as would be admissible in evidence," and must show "that the affiant is competent to testify to the matters stated therein." *Patterson v. Cnty. of Oneida*, 375 F.3d 206, 219 (2d Cir. 2004).

**DISCUSSION**

As the parties agree, the burden-shifting framework announced by the Supreme Court in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802-03 (1973), governs both of Plaintiff's claims. Under that framework, Plaintiff must first make out a *prima facie* case. *See, e.g.*, *Ruiz v. Cnty. of Rockland*, 609 F.3d 486, 491-92 (2d Cir. 2010). In order to establish such a case of wrongful-termination, Chukwueze must point to admissible evidence showing that he "(1) is a member of a protected class; (2) was performing his duties satisfactorily; (3) was discharged; and that (4) his discharge occurred under circumstances giving rise to an inference of discrimination on the basis of his membership in the protected class." *Graham v. Long Island R.R.*, 230 F.3d 34, 38 (2d Cir. 2000). For his retaliation claim, Plaintiff must point to evidence showing that he

7

(1) was participating in a protected activity known to his employer; (2) was subject to an adverse employment action that would deter a reasonable employee from pressing a discrimination claim; and (3) a causal connection between the protected activity and the challenged employment action. *See Cox v. Onondaga Cnty. Sheriff's Dep't*, — F.3d —, 2014 WL 3610747, at *5 (2d Cir. July 23, 2014); *Terry v. Ashcroft*, 336 F.3d 128, 141 (2d Cir. 2003). "Once a plaintiff meets this initial burden, the burden then shifts to the defendant to offer a legitimate nondiscriminatory reason for the termination." *Ruiz*, 609 F. 3d at 492. If Defendant offers such a reason, the burden shifts back to Plaintiff, who must show that Defendant's proffered reason was pretextual. *See, e.g.*, *Tex. Dep't of Cmty. Affairs v. Burdine*, 450 U.S. 248, 253 (1981).

In this case, Defendant concedes that Plaintiff can satisfy the first three prongs of a *prima facie* case for wrongful termination, but argues that Plaintiff has failed to adduce evidence sufficient to give rise to an inference that his termination was the result of discrimination on the basis of religion. (Def.'s Mem. Law Supp. Mot. Summ. J. (Docket No. 83) ("Def.'s Mem. Supp.") 8-9). As for the retaliation claim, Defendant contends that there is no evidence that Plaintiff participated in a "protected activity" and that, in any event, he cannot establish a causal relationship between any such protected activity and his termination. (Def.'s Mem. Supp. 1-2; Def.'s Reply Mem. Law Further Supp. Its Mot. Summ. J. (Docket No. 93) ("Def.'s Reply Mem.") 7-8). By contrast, Plaintiff moves for summary judgment on the theory that he has established a *prima facie* case and that NYCERS's proffered non-discriminatory reasons for his termination are pretextual. (Mem. Law Supp. Pl.'s Summ. J. Mot. (Docket No. 80) ("Pl.'s Mem. Supp.") 6-9). Applying the standards outlined above to the facts of this case, and analyzing each motion on its own merits, the Court concludes that Defendant is entitled to summary judgment on both claims.

### A.      The Wrongful-Termination Claim

First, Plaintiff's wrongful-termination claim fails as a matter of law because he has adduced insufficient evidence to establish that "his discharge occurred under circumstances giving rise to an inference of discrimination on the basis of his [religion]." *Graham*, 230 F.3d at 38. Plaintiff's principal, if not sole, evidence of discrimination is the meeting he had with Gaddy on December 4, 2008, in which he asserts that she "attacked him and berated him about his religious observance." (Mem. Law Opp'n Def.'s Mot. Summ. J. (Docket No. 89) ("Pl.'s Opp'n") 9). But the record does not support that assertion: At most, the evidence indicates that Gaddy expressed doubts, perhaps in a hostile or aggressive manner, about whether December 26th was actually a religious holiday. (First Collyer Decl., Ex. A, at 123:1-25). That evidence alone does not support an inference of discrimination, especially because Gaddy indisputably granted Plaintiff's request for leave at the end of the day. (Pl.'s 56.1 Resp. ¶ 33). It is even less sufficient when viewed in light of the following undisputed facts: that Gaddy herself interviewed and hired Plaintiff, knew of his religious beliefs for years, rated his job performance throughout that time as consistently "satisfactory," granted every one of his requests to take annual leave for Good Friday and December 26th, and approved his raises totaling 29% during his less than two-and-a-half years as a provisional NYCERS employee. (Pl.'s 56.1 Resp. ¶¶ 15-16, 18, 21, 23-33). *Cf. Altman v. New Rochelle Public School Dist.*, No. 13-CV-3253 (NSR), 2014 WL 2809134, at *13 (S.D.N.Y. June 19, 2014) (discussing the "same actor inference," which applies when the same actor both hires and fires an employee alleging discriminatory termination, on the theory that "it is suspect to claim that the same manager who hired a person in the protected class would suddenly develop an aversion to members of that class" (internal quotation marks omitted)).

In the alternative, Plaintiff's claim would fail at the third stage of the *McDonnell Douglas* analysis for largely the same reasons. That is, Defendant has indisputably come forward with a legitimate, non-discriminatory reason for Plaintiff's firing — namely, his submission, while a provisional employee, of an overtime sheet after he was explicitly told not to work overtime. Under *McDonnell-Douglas*, the burden would thus shift back to Plaintiff, who would have to show — without the presumption of discrimination generated by the *prima facie* case — that Defendant's proffered reason is a mere pretext for discrimination. *See Weinstock v. Columbia Univ.*, 224 F.3d 33, 42 (2d Cir. 2000). Plaintiff has failed to do so, as the uncontroverted evidence shows that Plaintiff requested permission to work overtime, that his request was denied, that he submitted overtime paperwork to the one person he might have believed was ignorant of that denial, and that he was fired little more than one week later.[4] In light of that unrebutted evidence, and the considerations cited above, no reasonable jury could find that Defendant's proffered reasons for firing Plaintiff were a pretext for discrimination on the basis of his religious belief. Regardless of whether all the allegations made against Plaintiff are true, all of the record evidence submitted to the Court in connection with these motions points to the conclusion that Defendant fired Plaintiff because his supervisors believed he had submitted an unauthorized overtime sheet — despite warnings not to — and that is all that is required to defeat Plaintiff's wrongful-termination claim. *See, e.g., McPherson v. N.Y.C. Dep't of Educ.*, 457 F.3d 211, 216 (2d Cir. 2006). Accordingly, Defendant is entitled to judgment as a matter of law.

---

[4] In his opposition, Plaintiff argues that Defendant's proffered legitimate, non-discriminatory reason "is a pretext for discriminatory termination," a fact that he alleges is "shown by numerous documents and statements," but he fails to support those assertions with specific citation to admissible evidence or any further discussion. (Pl.'s Opp'n 10-11).

10

**B.     The Retaliation Claim**

Plaintiff's retaliation claim also fails.  First, Plaintiff has produced insufficient evidence to show that he was participating in a protected activity known to his employer.  Although informal complaints can constitute protected activity, *see, e.g.*, *Treglia v. Town of Manlius*, 313 F.3d 713, 720 n.5 (2d Cir. 2002), such complaints cannot be so vague or "generalized" that the employer could not "reasonably have understood . . . that the plaintiff's complaint was directed at conduct prohibited by Title VII."  *Rojas v. Roman Catholic Diocese of Rochester*, 660 F.3d 98, 108 (2d Cir. 2011) (alteration omitted); *see also, e.g.*, *Galdieri-Ambrosini v. Nat'l Realty & Dev. Corp.*, 136 F.3d 276, 292 (2d Cir. 1998) ("[I]mplicit in the requirement that the employer have been aware of the protected activity is the requirement that it understood, or could reasonably have understood, that the plaintiff's opposition was directed at conduct prohibited by Title VII.").  Moreover, the burden is on a plaintiff to show that he complained "of unfair treatment due to his membership in a protected class" and not that he complained "merely of unfair treatment generally."  *Aspilaire v. Wyeth Pharm., Inc.*, 612 F. Supp. 2d 289, 308-09 (S.D.N.Y. 2009).  "To the extent that an employee complains about perceived 'unfair' treatment relating to job responsibility, hiring practices, or corporate policy, but fails to link the treatment to unlawful discrimination or to his protected status, he fails to establish that he was engaged in protected activity."  *Penberg v. HealthBridge Mgmt.*, 823 F. Supp. 2d 166, 191 (E.D.N.Y. 2011).

In this case, Plaintiff fails to show that he complained, whether formally or informally, in "sufficiently specific terms" so that NYCERS was "put on notice" that he believed he was "being discriminated against on the basis of [religion]."  *Ellis v. Century 21 Dept. Stores*, 975 F. Supp. 2d 244, 280-81 (E.D.N.Y. 2013).  Plaintiff points to his meeting with Gaddy on December 4, 2008, and to their exchange on January 20, 2009.  (Pl.'s Opp'n 15).  But while that evidence

11

certainly establishes that Plaintiff complained in general terms to Gaddy about "what [he had] been experiencing" (Second Collyer Decl., Ex. I, at 154:3), it does not establish that Plaintiff complained, let alone in clear enough terms, about unfair treatment on account of his religion. Accordingly, Plaintiff fails to establish the first prong of a *prima facie* case. *See, e.g.*, *Galdieri-Ambrosini*, 136 F.3d at 292 (holding that plaintiff failed to make a *prima facie* case as to the protected-activity prong where "none of [plaintiff's testimony] suggested any complaint of . . . discrimination"); *Castro v. City of N.Y.*, — F. Supp. 2d —, No. 10-CV-4898 (NG) (VVP), 2014 WL 2582830, at *14 (E.D.N.Y. June 5, 2014) (dismissing a retaliation claim on the ground that while plaintiff's statements to his employer "may reflect plaintiff's perception that his experiences in the Council Member's office were unpleasant, they cannot be understood to be statements made in an effort to oppose discrimination" and citing cases).

In the alternative, Plaintiff's retaliation claim would also fail at the third stage of the *McDonnell Douglas* test. As the Supreme Court made clear last year, claims of retaliation in violation of Title VII "must be proved according to traditional principles of but-for causation," which "requires proof that the unlawful retaliation would not have occurred in the absence of the alleged wrongful action or actions of the employer." *Univ. of Tex. Sw. Med. Ctr. v. Nassar*, 133 S. Ct. 2517, 2533 (2013). Put slightly differently, Plaintiff must produce sufficient evidence to show that NYCERS's proffered reason for his termination — namely, his submission of the overtime sheet reflecting expressly unauthorized work — was pretextual *and* that he would not have been terminated but for his alleged complaints about discrimination. *See id.* Plaintiff has not done so. In particular, the record does not include evidence from which a reasonable jury could conclude that NYCERS's proffered reason for his termination was pretextual. Gaddy approved Plaintiff's request for leave on December 26, 2008, despite not only her knowledge of

his religion, but also her knowledge of whatever complaints Plaintiff made on that date.  And Plaintiff, a provisional employee, was fired little more than one week after he was discovered to have submitted a timesheet reflecting overtime he was specifically prohibited from working — and only one day after that misconduct was brought to the attention of Stephen and Ramsami. (*See* Pl.'s 56.1 Resp. ¶¶ 43-44; First Collyer Decl., Ex. D).  In light of these circumstances, Plaintiff has failed to show that he would not have been terminated but for whatever complaints he may have made about discrimination on December 4, 2008, and January 20, 2009.  Accordingly, his claim must be dismissed.[5]

## CONCLUSION

It is true that summary judgment should be granted to defendants in discrimination cases only with considerable caution, as intent is a question of fact not easily proven directly.  *See, e.g.*, *Schupbach v. Shinseki*, 905 F. Supp. 2d 422, 438 (E.D.N.Y. 2012).  But, "as the Second Circuit has noted, 'to allow a party to defeat a motion for summary judgment by offering purely conclusory allegations of discrimination, absent any concrete particulars, would necessitate a trial in all discrimination cases.'"  *Id.* (quoting *Meiri v. Dacon*, 759 F.2d 989, 998 (2d Cir. 1985))

---

[5]  In his memorandum of law in opposition to the motion for summary judgment, Plaintiff asserts that Defendant failed to disclose key documents in discovery that might have shown pretext — and that that failure supports an inference that Defendant "acted unlawfully and would not like that to be known." (Pl.'s Opp'n 8, 15).  Putting aside the fact that Plaintiff cites no evidence to support his assertion of discovery violations, he cites no authority for his contention that those violations support a legal inference.  Moreover, Plaintiff failed to pursue the alleged discovery violations before the close of discovery, even though he was represented by counsel for more than three months of discovery and, through counsel, he received multiple extensions of the discovery deadline.  (Docket Nos. 62, 65, 70, 72).  Ten days before the close of discovery, Plaintiff's counsel did file a letter motion seeking a conference to address certain discovery disputes (Docket No. 68), but that same day in a text-only order the Court denied the motion "without prejudice to renewal after counsel meet and confer in person to discuss the relevant disputes" (Docket No. 69), and counsel never raised the issues again.  In light of that record, Plaintiff cannot now be heard to complain about alleged discovery deficiencies, let alone cite those deficiencies as a basis to deny Defendant's motion for summary judgment.

(alterations omitted).  Here, for the reasons stated above, Plaintiff simply has not adduced any specific evidence to support his claims, and they must therefore be dismissed.

Accordingly, Plaintiff's motion for summary judgment is DENIED, Defendant's motion for summary judgment is GRANTED, and the Amended Complaint is DISMISSED.  The Clerk of Court is directed to terminate Docket Numbers 77 and 81 and to close the case.

SO ORDERED.

Date: July 25, 2014
      New York, New York

_____
JESSE M. FURMAN
United States District Judge